UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          ECF CASE
DAVID LAPINE and GARY OWEN,

    Plaintiffs,                                      **AMENDED COMPLAINT**

vs.                                                          05 CIV. 1389 (CLB)

TOWN OF EAST FISHKILL,
DENNIS MILLER, HIGHWAY
SUPERINTENDENT, TOWN
OF EAST FISHKILL,

    Defendants.
----------------------------------------------x

    By and through their counsel, Michael H. Sussman, plaintiffs, David Lapine and Gary Owen, hereby allege as and for their Complaint:

### I. PARTIES

1. Plaintiffs are of legal age and reside in the County of Dutchess within this judicial district.

2. Defendant, Town of East Fishkill, is a body municipal organized pursuant to the laws of the State of New York. It may sue and be sued, and acts through its duly elected officials and others delegated by state law, custom and practice to act on its behalf.

3. Defendant, Dennis Miller, is the duly elected highway superintendent for the Town of East Fishkill. He also resides in the Town of East Fishkill, within this

judicial district. He is sued in his official and individual capacities. All actions taken or omitted as set forth herein were done/not done under color of state law.

## II. JURISDICTION

4. As plaintiffs allege that defendants burdened the exercise of right to freedom of speech as protected by the First Amendment of the United States Constitution, and as made actionable against these defendants by 42 U.S.C. sec. 1983, this Court has jurisdiction to hear and decide this matter pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988.

## III. FACTUAL ALLEGATIONS

5. Plaintiffs are employed by the Town of East Fishkill Highway Department, which has approximately 24 employees.

6. Plaintiffs are long-time employees with strong records of performance.

7. In or about October 2002, at the request of a member of the Town Board, plaintiffs provided sworn statements to a state police investigator divulging certain illegal acts committed by one of the three foremen of the highway department.

8. Plaintiffs provided these statements in good faith and based upon their own personal observation. These statements concerned matter of public importance, not matters personal to plaintiffs, or either of them.

9. The same month, both plaintiffs spoke with the Town Supervisor about what was happening at the highway department and he stated that he would look into it.

10. Shortly after providing this statement, defendant Miller asked plaintiff Lapine about the statement he had given to the state police, made clear that he had read the statement and told plaintiff Lapine that he better make sure he saw what he saw.

11. The same month, plaintiffs' peers at the highway department began calling them rats and claimed that they could not be trusted.

12. In November 2002, plaintiff Lapine informed Town Board member Ethel Walker about the increasingly hostile atmosphere at the highway department.

13. Within a month of Miller's learning of plaintiffs' protected speech, he assigned Lapine plaintiff to flagging, a dangerous task not typically assigned to operators.

14. This assignments continued for several years.

15. Other operators were not generally assigned to the flagging function.

16. Defendant Miller directed this assignment in retaliation for plaintiff Lapine's protected speech.

17. In November 2002, one of plaintiff Lapine's co-workers falsely accused him of assaulting him.

18. Defendant Miller likewise accused plaintiff Lapine of doing this with no inquiry or investigation.

19. Starting the same month, plaintiff's peers commenced writing RAT and smearing grease on Lapine's personal truck.

20. On December 13, 2002, one of plaintiff Lapine's co-workers let the air out of the highway department truck plaintiff drove, wrote the word "RAT" on its side and drew a picture of rat on the truck.

21. Six days later, plaintiff Lapine's wife advised Town Board Walker of these acts and asked her to take appropriate action to stop it.

22. By January 2003, Miller intentionally excluded plaintiffs from overtime related to snow removal activities.

23. The same month, plaintiffs witnessed co-workers writing "Rat" and smearing grease on their trucks.

24. In the middle of January 2003, plaintiff Owen spoke with Town Supervisor Peter Idema and asked for his assistance ending the retaliation being carried out by members of the highway department against him and co-plaintiff Lapine.

25. On several occasions in February 2003, defendant Miller and his agents failed to contact plaintiffs for overtime relating to snow removal.

26. In March-April 2003, Miller removed plaintiff Lapine from his typical

responsibility of running the paver, a task he had been doing for 12 years. Owen was likewise reassigned, disallowed from the blacktop crew and isolated with Lapine from other employees.

27. In June 2003, co-workers again smeared grease on plaintiffs' trucks; when Lapine approached defendant Miller for assistance, Miller indicated he could not anything about this and directed plaintiff to remove the grease from his truck.

28. The same month, Messina, a foreman, tried to coerce another foreman, Hillman, into falsely confirming that Owen had cursed him.

29. Later that month, plaintiff Owen received a letter from the highway Superintendent directing him to attend a meeting on June 30, 2003 concerning unprofessional conduct he allegedly directed at Messina.

30. After receiving this letter, plaintiff Owen's wife contacted Town Board member Walker and complained about the treatment plaintiffs were receiving and the fact that the Town Board was permitting this to continue.

31. In August 2003, plaintiff Lapine's wife again met with the Town Supervisor and appealed for his assistance in ending the ongoing harassment of her husband.

32. On September 12, 2003, plaintiff Owen's wife met with Idema and again demanded an end to the harassment directed against her husband and Lapine. The Supervisor claimed that plaintiffs had created the hostile work

-5-

environment and stated that after he returned from vacation, he would get everything under control.

33. In October 2003, one of the highway department's newer employees spit at plaintiffs, bumped them in their chests and starting acting in an aggressive manner toward them.

34. In October 2003, another employee placed a fake rat in the bathroom at the highway department.

35. On November 7, 2003, plaintiff Owen's wife demanded a copy of the complaint allegedly made against her husband for using an ethnic slur against foreman Messina the prior June. Supervisor Idema directed that she not be provided a copy of said complaint, claiming the matter was under investigation.

36. Throughout 2004, defendants condoned the same kind of conduct, i.e., harassment effected by smearing grease and/or writing the word "rat" on the trucks plaintiffs were driving.

37. During the summer of 2004, defendants' agents barricaded plaintiff's Lapine's truck, tossed rotten apples toward it and drew profanity on it.

38. On November 29, 2004, plaintiff Lapine found that rotten apples had been throw at his plow truck.

39. In 2005, plaintiff Owen was falsely charged with being at plaintiff Lapine's

-6-

home in the fall 2004 during work time.

40. Plaintiffs have been isolated during the lunch rooms, required to eat alone, separate and apart from the other workers.

41. The acts outlined above have caused plaintiffs to be humiliated, anxious, embarrassed and angry; due to defendants' conduct, plaintiff Lapine has been prescribed medication to relieve tension and anxiety.

42. Despite plaintiffs' best efforts, including reporting the incidents of harassment to his supervisors, including the Town Supervisor, defendants have failed and refused to cease this retaliatory and harassing conduct, or caused it to cease.

## IV. **CAUSES OF ACTION**

43. Plaintiffs hereby incorporate herein paras. 1-42.

44. By engaging in and/or condoning the practices set forth above, defendants retaliated against plaintiffs [in the terms and conditions of employment] for protected expression under the First Amendment, i.e., reporting corruption and theft of services by a foreman in the highway department, in violation of 42 U.S.C. sec. 1983.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to fairly hear and decide the matters set forth herein;

c) enjoin defendants from continuing to retaliate against them in the terms and conditions of their employment for the protected speech acts in which they engaged;

d) award plaintiffs compensatory damages for the pecuniary and non-pecuniary damages they have suffered;

e) award to plaintiffs, and against defendant Miller, punitive damages for his malicious disregard for the plaintiffs' constitutional rights;

f) order defendants to pay the plaintiffs reasonably incurred attorneys fees and costs and,

g) enter any other relief the Court deems just and required.

Respectfully submitted,

Michael H. Sussman (3497)

LAW OFFICES of MICHAEL H. SUSSMAN
PO Box 1005
Goshen, New York 10924
(845)-294-2991

Dated: May 15, 2005

## CERTIFICATE OF SERVICE

Michael H. Sussman, counsel for plaintiff, hereby certifies that on 16 May 2005, he caused to be mailed, postage pre-paid, one copy of plaintiffs' Amended Complaint to Rocco Conte, Esq., One Barker Avenue, Suite 675, White Plains, NY 10601, counsel for defendants.

_____
Michael H. Sussman